If the clerk would call the case. 3-22-04-97 SBC Waste Solutions, Inc. Act III by Matthew Caruso v. Christopher Flood, announced by John Cooney. Mr. Cooney, I want to make sure that you can hear me okay, but if you're ready to proceed, please step forward. Thank you, Your Honors. John Cooney, the clerk, here. John Moynihan, I'm going to take this off for right now. Worry that you can just move back a little bit. We might be okay. No, this is fine. I can hear your questions. It's just that I'm not facing you. Okay. On behalf of John Moynihan, is my partner on behalf of Christopher Flood, regarding the order entered by Judge Wheaton, DuPage County on November 7th, 2022. Initially, SBC conceded the issue that the Dissenters' Rights Act applies or that they have pled any facts or law to support their claim that the Dissenters' Rights Act or the Illinois Business Corporation Act is applicable. There's no facts pled. In fact, in their petition, in reply to their appointment of a receiver under the Dissenters' Rights Act, they admitted that found on supplemental record page 71, paragraph 14. Judge Wheaton continued that motion for well over a year, year and a half before she ruled and determined that her inherent authority under the Business Corporation Act, that she has an ability to appoint a appraiser for the value of the shares. There's nothing alleged and nothing can be asserted now because they've waived it on their reply brief as well as in the trial court. In order to get to the Dissenters' Rights Act, which plaintiff was relying upon in their initial motion and in their brief, is you have to have, first, you have to have a dissenting vote, something that would enact the rights under Section 1165, Dissenters' Rights Act. And that's under Fisk v. Toys v. Novelty and Hunter v. Veracelli, Veracelli. There's no inherent rights under the Business Corporation Act. In fact, as the court in Collier v. Collier, which this court quoted four weeks ago in the case of Bargess v. BCN Technical Services found at 223 Illinois Pellet 3rd, 220178, paragraph 39. Corporation is an artificial being, indivisible, intangible, existing only in the contemplation of the law. If the language is unambiguous in the Dissenters' Rights Act, you have to first have an event, a dissenting event, which a minority shareholder objects to and dissents to. Then you can move on from there. There was none that occurred in this matter. The court was bound. Counsel, I have just one quick question. The only way this matter is allegedly, even here, jurisdictionally, is your position that the order of an appraiser and to sign the appraisal contract is an injunction. So it is the only issue we could even possibly, everything you're talking about, those issues, those are non-interlocutory issues, correct? Correct. Yes, sir. So why are we spending time on that? In part, Your Honor, you are correct. However, in order to get the right for the judge to even act, to appoint an appraiser and issue the injunction, forcing my client to sign a contract to the appraiser's contract and pay for those fees and be obligated and bound by that contract, that is an injunction. She was ordering Christopher Flood to sign that. And she has to have some authority under law to do that. There is no authority under the law. The only tangential one that was argued or brought up was under the Dissenters' Right Act. But if the Dissenters' Right Act does not apply, then the court has no inherent power under the Business Corporation Act to appoint an appraiser. So it is something that this court must consider because this goes back to December 7th or December 3rd, 2020, court's order. Well, don't you think jurisdiction comes first? So the first issue is, is the order an injunction under the law of this state? Then, that has to be true first before we're even able to exercise any decision on any issue here. So I would think you're arguing in the reverse order. Okay, well, and then we'll address the jurisdiction. In Ray Minor, if there is an order prohibiting someone to act or ordering them to act, that constitutes an injunction. And under 307A, we'd have a right to appeal that decision within 30 days. It's undisputed, Judge. We can order our client, Chris Flood, to sign the contract for the appraiser, that's an action, and then be obligated by those contract terms. So that created the injunction issued by the court. So with that occurring on November 7th, it affects the prior orders in conjunction with that final order, ordering an appraiser. The court has to have a grounds or a basis under law to order an appraiser, and there is none in the Corporation Act. And that's why we went right into the Dissenters' Right Act. The Dissenters' Right Act is not complied with by the plaintiff in this case. They haven't alleged anything, and the court cannot rely on it. Now, the court did mention in the June 14th hearing that the Dissenters' Right, she agreed with us that the Dissenters' Right Act is to be liberally construed, but that's in favor of the minority shareholder, as the Hunter case stated. And here, she construed it as a liberal construction to support an action that never occurred in favor of the corporation in the majority shareholder. So it did a detriment on the minority shareholder. The fact that the injunction was issued on November 7th, we'd have to look back as to see what the court used to appoint an appraiser. In this case here, it was made out of old cloth. There is no statutory authority whatsoever in the business corporation. So... Who does the appraiser belong to? Pardon? Who does the appraiser belong to in this circumstance? You have parties who can't agree on the appraiser. The statute allows the judge to appoint an appraiser. Is that an independent appraiser? That would be an independent appraiser. The court could do that. However, that's under Section G of the Dissenters' Right Act. To get to there, you'd have to first have an event of a dissenting event that occurred, which there has been none pled, none alleged in the brief, none argued in the brief, none pled in the state court, and the only one allegation that they pled in their amended complaint was refuted by their motion to, their reply on their motion to appoint a receiver where they said that didn't exist. I think my question is a little simpler than that, though. If the parties can't agree on an appraiser and the court appoints somebody, is that then the court's appraiser? That would be the court's appraiser. However, in this case here, the court can't reach that decision without first a dissenting event occurring. And then the procedures before that, the notice provision as required under Section 70A, the notice requirement under Section 70B, a counter-offer made by the corporation that is supplemented with all these financial documents which the court recognizes were required to be tendered over under discovery back in January 5th, 2020, ordering them to, SBC, to supply these documents. And they never supplied the documents, including up until the date the court made the conditional appointment of the receiver subject to the receiver accepting that appointment, which the receiver refused to accept until a contract was signed. And that was a contract between the parties. So I guess to answer your question, Your Honor, it's a question as to whether it would be the court's receiver or the party's receiver because we both had to sign the contract, SBC and Mr. Flood. Okay, thank you. Mr. Cooney, your device is giving us a little bit of feedback. I want to make sure that you can hear okay. I can hear okay. All right, and I'll keep my voice up and I know Justice Peterson will also. It seems like that fixed our problem. If you want to continue, if you have anything else, I think my questions were asked by Justice McDade, so I don't have any questions. Okay, this is a relatively simple question. I believe we have established that we have jurisdiction. This court has jurisdiction over this, that this was an injunction, that there is no basis for the court to act. So we'd be asking that the court reverse the November 7th order, which would in essence require the court to reverse the prior orders on August 30th, April 28th, 2022, June 14th, 2022, and then also the December 3rd, 2021 order. Thank you. Thank you, Mr. Cooney. Mr. Caruso. Good morning. Justice Hedl, Justice Peterson, Justice McDade, Mr. Cooney, Mr. Moynihan, may it please the court, may I introduce the newest lawyer in Illinois, Melissa Hood, who's sworn in today? Sworn in in November, and before that she was a paralegal for 10 years, so we're happy to have her. Congratulations. She won't be answering any questions, unless you really want to get her nervous. I pulled out my copy of the complaint, because that was sort of overlooked in Mr. Cooney's comments. Count three is petition for valuation of SBC shares for the purpose of the buyout of Crisblood shares pursuant to section 11.7 of the Business Corporation Act. They filed a 2615 motion and that was denied, and then we went through all the procedures, so I think the main issue in this matter is jurisdiction. Is it an injunction? I'm sorry, I grabbed everything. And we, of course, as we state in our briefs, say it's not an injunction. There was never any 304A language prior to the order that was the subject of this appeal, and in fact it's an eye opener to read all the previous orders prior to November 7, 2022. I think there's close to 20 of them. We spent about two years going through these procedures, so that's why our alternate position is, they waived the right to appeal at this point. But I'd like to start my comments with explaining this whole business about the appraiser and the signatures. I believe we'd still be working on the buyout procedures if it wasn't for this signature thing. Each party, at some point during the procedure, it's in the orders, submitted their own appraiser pursuant to the January 5, 2021 order suggesting each party submit their proposed appraiser. Of course, we didn't agree on each other. Nothing is agreed in this case. So as Justice McDade pointed out, the court looked at the statute of 11.70, and this gives her the power to appoint an appraiser. That was on April 28, 2022. The court appointed William Polash. His name isn't important. And then the order of May 18, 2022, there's a briefing schedule on a motion to reconsider that. On June 14, the court denied Chris Flood's motion to reconsider the appointment of the appraiser and continued the case for two months and two weeks because she thought we'd work with the appraiser and do the buyout procedure. The court mentioned on the record she knew this appraiser from another case. He did a good job. She picked him, but according to the statute and normal practice, the parties pay for the appraiser. Well, we came back after two months, on August 30, 2022, and informed the court. She expected some progress. We didn't do anything because Chris Flood refused to sign an engagement letter. We didn't see this coming. The judge didn't order signing an agreement with an appraiser. She ordered, this is the court-appointed appraiser. So yes, my firm wrote the order that day to move things along, and it said, by signing this engagement letter, Chris Flood isn't waving his right down the road to appeal. We wanted to move it forward. So that was put in the order of August 30. Continued another two months. The judge says, how's the appraisal doing? Well, Chris Flood refuses to sign the appraisal. So on November 7, she orders him to sign the appraisal. Thirty days later, we get the appeal. Contract to me. A contract with the appraiser. Did I say engagement? You said appraisal. Oh, I'm sorry. Yes, thank you. Contract. So I look at it as any other ministerial thing. If you're ordered to take a deposition, you have to sign an agreement, or you have to have some contract with a court reporter. In order to come to this appellate court, you have to agree to pay for the transcripts to come here. That's how we look at the signature. Not as the typical type of injunction that gives the court jurisdiction under 3071. And even if the court did have jurisdiction over 3071, it would be just that signature, not all the other orders, 20 some other orders where we were trying to go through this process. So our position is the case should be returned to the trial court to finish the work of evaluating Chris Flood's shares. I did have some comments about the argument about the statute itself. I'm not sure that we're really there. So if I could just clarify something else factually that might be helpful to get you to have an understanding. In my brief, I said that the court should be given wide discretion if we get to abuse of discretion at all. Because she sat through the Raplevin hearing, which was a series of evidentiary hearings and emergency motions. We were in and out of court. It was mayhem. I'd like to explain that it came out at the hearing, and the judge sat through this, that this SBC flood waste ink was literally put together at a kitchen table with handwritten agreements. And some of the people were family members, former Flood brothers who started. Chris Flood is the brother of Brian Flood, who's an agent of SBC Flood Waste. So Chris's deal was, and this is in dispute like everything else, whether it's 5%, 8%, or 10%, but he purchased a percentage of SBC flood waste by putting trucks into the business. He didn't pay a penny of money. He donated trucks. And these trucks were purchased from Albuquerque. They were used garbage trucks. Some of them he paid like $2,000 for. They were retired because they were old. And so SBC took them, fixed them up, put a lot of money, hundreds of thousands of dollars into them, painted them, put SBC on the side. And so when Chris Flood decided to switch teams again to the Flood brothers team, he wanted out. And that relates to dissent and everything else, but it's important to know that his position at the Replevin trial was, I want my trucks back. They're mine. And the judge found that he actually transferred them, the ownership, to SBC. But if he were able to take the trucks back, that would have destroyed SBC. They couldn't use trucks to replace them because it takes so long to fix them up. And to buy a new truck, it takes like a year. You don't go to a new garbage truck sales lot and pick one out. I believe they bill them to order, and it can take a year. So that's the background the trial court judge had when determining dissent. And when she looked at the text of May 31, 2019, she found was the date of the valuation because that's the date of dissent. So when Chris is asking for $450,000, that was essentially, and you look at the next sentence, winter is coming for SBC. That's a Game of Thrones reference that means bad things are coming. That was just one more of a long series of mayhem-like interactions that the judge saw as Chris Flood's desire to destroy SBC from the inside. Mr. Cruz, so you're simply asking us to find that we don't have jurisdiction because a trial judge's order, the parties that sign an engagement letter after ordering them to have an appraisal, it's not an injunction. Yes. Please go. Well, that's really all the argument that I believe is necessary. I thank you for your attention and ask that the appeal be dismissed for lack of jurisdiction or, in the alternative, denied the request to find that the judge abused her discretion. Justice McDavid, do you have any questions? No, I don't. Thank you. I have no more. Thank you. Thank you, Mr. Caruso. Mr. Cooney? Good morning again. Just to address that last point. Judge Wheaton ordered Chris Flood to sign a contract to pay money to a third party to be obligated to that third party for any of the expenses that under that contract. That's an affirmative action. That's an injunction requiring him to enter into a contract with a third party. It's not like entering into a contract with a court reporter or ordering the transcripts to come to an appeal. This is a legally binding contract. If you breach that contract, you could be sued under that contract. She's suggesting you can't be sued if you don't pay your bill for a transcript? Well, there is a law, a specific law on that. It says an attorney who orders that has to pay that. So that's a little bit different. Their analogy was not an appropriate analogy here. Here is the court ordered an appraiser to be hired by the parties, Mr. Polash, that we had to sign a contract. The court order that he refers to doesn't order them to do that. It states this court appoints Mr. Polash. Should Mr. Polash accept this appointment, Mr. Polash is authorized and directed, et cetera. The next order says Christopher Flood's signature. This is the August 30th order. August, Christopher Flood's signature shall constitute, shall not constitute a waiver of his rights for appeal as to the appraiser or the appointment of an appraiser. And then finally on November 7th, Christopher Flood is ordered to execute the FGMK LLC's contract, that's Christopher Polash's company, for the appraisal of the SPC Waste Solutions. So those three orders right there, they would have been put into one order. This would have been filed before May 28th, 2022, instead of November 7th, 2022. I took these orders, these many orders. Now, counsel mentioned there's been like 20 orders in this case. I went through, as he did, 10 of those 20 orders, everything from November 3rd until February 28th. We're ordering SPC to provide financial documents that are required under the Dissenters' Rights Act in order for the court to even get to the stage of saying, I'm gonna appoint an appraiser, independent appraiser. It's only upon that issue that the court can act in order an appraiser be appointed. And by the way, I was referring to it as receiver in my opening, every time I said receiver, I meant appraiser. So none of this occurred. So from that period, from April 28th to November 7th, there was no order requiring anyone to act. This was not appealable. There was no waiver going back in time to 20 orders ago that counsel mentioned because there was no affirmative requirement for Mr. Flood to act. And in order, the counsel went back before the court directed him as to this, and I feel that I have to address it, is under 1165, there's four areas that would create dissenters' rights. One, you're gonna get rid of preferential payments. Two, you're gonna impair the shareholder or the minority shareholder's rights under the act. Three is you're going to modify the Articles of Incorporation or the bylaws to affect the shareholder's rights. And four is the bylaws or the Articles of Incorporation or board resolution sets forth dissenter rights under the corporate governing documents. None of those happened here. He mentioned, oh, there's a republican of four trucks, of five trucks. It was a dispute as to who had the proper ownership. It fell on the other side of Mr. Flood, so it went back, the trucks went back. There was no dissenting vote. There was no vote to create dissenter rights which the court then would need to appoint a receiver or appraiser. Without that event, the court had no power to act in the mere fact of making him pay for and sign a contract and bind him to a third party is an injunction under in re minor. So it asks that you reverse the decision of Judge Wheaton and remand it back with directions to go forward and that she doesn't have the authority to appoint a receiver. Thank you. Any questions? Any questions, Justice McKibbin? No. No, I have no more questions. Thank you, counsel. We will take this case under advisement and issue a ruling in due course. Have a good day.